## MIDLAND MUT. LIFE INS. CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 7001.

Circuit Court of Appeals, Sixth Circuit.

May 6, 1936.

Earl F. Morris, of Columbus, Ohio, and Edw. W. Merkel, of Cincinnati, Ohio (F. J. Wright, of Columbus, Ohio, Joseph C. Dinsmore, of Cincinnati, Ohio, Arnold, Wright, Purpus & Harlor and Richard H. LeFevre, all of Columbus, Ohio, and Dinsmore, Shohl, Sawyer & Dinsmore, of Cincinnati, Ohio, on the brief), for petitioner.

Helen R. Carloss, of Washington, D. C. (Frank J. Wideman, Sewall Key, Norman D. Keller, and Louise Foster, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and SIMONS, Circuit Judges.

SIMONS, Circuit Judge.

The sole question involved in this review is whether accrued interest on defaulted loans secured by mortgages constitutes taxable income to the mortgagee by virtue of its having bid in the properties at foreclosure sales for the debts and interest, when the fair market value of the properties was less than the bids. The respondent made a determination of a deficiency in the petitioner's computation of net taxable income for 1930 by adding to

such net income the accrued interest on certain mortgage loans in that year foreclosed. . The Board of Tax Appeals sustained the determination, notwithstanding undisputed evidence that fair value was less than the total of the debt, including interest.

The petitioner is a life insurance company, and kept its books on a calendar year cash basis. Only those payments of interest which were actually received were entered thereon. In 1930 it foreclosed certain Michigan and Ohio mortgages, and at the sales bid in the various parcels for amounts equalling the principal of the loans plus the accrued interest. Its purpose in so doing was to secure itself against loss in the event of redemption; the local law in each case making provision for such redemption by the mortgage debtor. Upon receipt of title to mortgaged property, the petitioner transferred the investment on its books from the mortgage loan account to the real estate account, and carried it upon its books in an amount equalling the principal of the loan, plus cost of foreclosure, but exclusive of interest. No unpaid interest was carried as an asset either in the petitioner's annual statement or in reports to insurance departments. The bids in respect to the real estate here involved were made without regard to the actual value of the property, and at each sale the petitioner was the only bidder.

The deficiencies were asserted by the respondent, determined by the Board, and are now supported upon review on the ground that a bid at foreclosure sale by the mortgagee establishes the market for the particular property sold and is determinative as to receipt of income by the mortgagee. This is because the legal effect of such sale is said to be the same as though the mortgagee paid the full amount of its bid in cash and then received in cash the full amount of its debt, so that interest is received by it in cash or its equivalent. This view is supported, not only by prior decisions of the Board, but by the Court of Claims in National Life Insurance Co. v. United States, 4 F.Supp. 1000, certiorari denied Lucey v. United States, 291 U.S. 683, 54 S.Ct. 560, 78 L.Ed. 1070, and by the Court of Appeals of the Eighth Circuit in Helvering, Com'r, v. Missouri State Life Insurance Co., 78 F.(2d) 778, 780.

 With profound deference to the courts which have considered the problem, we are unable to accept their reasoning.

Whatever may be the legal effect of a foreclosure sale upon the passing of title and the extinguishment of the mortgage debt, the fact indisputably remains that, when the mortgagee buys in the property, he does not pay cash. The law permits him to set off the debt against the obligation created by his bid. This distinction is vital in determining whether he has received income. Without possessing the debt, the mortgagee would not bid. He is primarily a lender and a purchaser only through necessity. To say that he pays cash and receives cash is to fly in the face of the realities. A mortgage lien upon property of a defaulting mortgagor is generally worth no more than the fair value of the security. It is true that the law invests it with the virtue of currency, but only for a limited and definite purpose—the purchase of the mortgaged property. We are unable to see by what alchemy this baser metal is transmuted into gold through the mere formalities of a foreclosure sale.

Income has been defined as "the gain derived from capital, from labor, or from both combined." Stratton's Independence v. Howbert, 231 U.S. 399, 415, 34 S.Ct. 136, 140, 58 L.Ed. 285; Doyle v. Mitchell Bros. Co., 247 U.S. 179, 185, 38 S.Ct. 467, 62 L. Ed. 1054. Approved and analyzed was this definition in Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 1570: "Here," said the court, "we have the essential matter: not a gain accruing to capital; not a growth or increment of value in the investment; but a gain, a profit, something of exchangeable value, proceeding from the property, severed from the capital, however, invested or employed, and coming in, being 'derived'— that is, received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal—that is income derived from property. Nothing else answers the description." It is said on behalf of the respondent that by bidding the full amount of its debt the mortgagee secured protection against the mortgagor's redemption; that, having acquired a benefit, it should pay the tax regardless of the value of the property. But a benefit is not necessarily income. That need not be demonstrated. Here it is clearly not a gain derived from capital, or received or drawn by the taxpayer for its separate use, benefit, and disposal. The property may be redeemed. In that event income is derived to the extent

of interest included in the redemption price. Then interest is paid, and likewise received. But the property may not be redeemed. Is the realization in the one case no more in respect to the creation of income than mere expectation in the other? We think to put the query is to answer it. As was further said in Eisner v. Macomber: "It becomes essential to distinguish between what is and what is not 'income'; * * * and to apply the distinction, as cases arise, according to truth and substance, without regard to form."

■ There is urged upon us the existence of a presumption that at foreclosure sales the bid price is the fair market value of the property. Whether so or not, and this we do not decide, certainly the presumption by all familiar rules must disappear in the face of unchallenged and uncontroverted evidence that the fair value of the property is less. We know neither reason nor authority for such presumption being given conclusive effect. If so, foreclosure sales could never be set aside for inadequacy of price, however gross or shocking to the conscience such inadequacy might be.

The court in Helvering v. Missouri State Life Insurance Co., supra, made a distinction between surrender of mortgaged real estate by the mortgagor to the mortgagee and the purchase of the property by the mortgagee under foreclosure. It concluded that a transaction of the first kind produces no income by way of interest to the mortgagee, while one of the latter does. We are unable to grasp the principle which distinguishes them, and we think the differentiation will not withstand analysis. Where the defaulting mortgagor surrenders the mortgaged property in extinguishment of the debt, the mortgagee acquires as against him a clear title. Where the mortgagee buys the property at foreclosure, he does not get clear title, but one still encumbered by the mortgagor's right to redeem. It seems to us anomalous to hold that one who receives less derives income, while one who receives more derives none. Demonstrating its conclusion that the recipient of the surrendered mortgage derives no income from accrued interest, the court says: "If the rule were otherwise, a life insurance company, all of the loans of which were in default and which was obliged to take over from its mortgagors mortgaged lands of little value in order to save the expense and delay of fore-closure, would be in the same situation with respect to interest received as though all of its loans were good and the interest had been paid in cash." We fail to see in what better situation is a life insurance company which not only is obliged to take over from its mortgagors lands of little value, but is in addition subjected to the expense and delay of foreclosure. If the illustration is persuasive in the one case, we are unable to see how it can be any less so in the other.

The theory of constructive receipt of income is not here applicable.

The decision of the Board is reversed. Conceiving it to be immaterial, the Board made no finding of fair value in respect to the foreclosed properties. Proper disposition therefore requires that the cause be remanded for further proceedings consistent herewith.