### CORNING v. COMMISSIONER OF INTERNAL REVENUE.

No. 7816.

Circuit Court of Appeals, Sixth Circuit.

June 6, 1939.

David A. Gaskill, of Cleveland, Ohio (Thompson, Hine & Flory, and Earl P. Schneider, all of Cleveland, Ohio, on the brief), for petitioner.

Morton K. Rothschild, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

SIMONS, Circuit Judge.

The question to be decided is whether the income for 1934 of two trusts created by the petitioner in a previous year and accumulated during the tax year, was taxable income of the petitioner in 1934 by reason of the provisions of §§ 166 and 167 of the Revenue Act of 1934, 26 U.S.C.A. §§ 166, 167. The Board of Tax Appeals in redetermining the deficiency asserted by the respondent held that it was.

The 1934 Act provides:

"§ 166. Revocable trusts.

"Where at any time the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust shall be included in computing the net income of the grantor."

By the first trust instrument the petitioner conveyed to the Union Trust Company of Cleveland securities to be held by it as trustee during the lives of himself, his wife, father and mother, and for a period

of twenty-one years after the death of the survivor, when the corpus was to be divided among the petitioner's direct descendants, or if none survived, to be paid to the petitioner's father if living. Of the income of the trust estate the trustee might pay so much as it deemed advisable to the petitioner and was then to accumulate the remainder and add it to the principal of the trust. Upon his death it was to pay the income to his wife. The trustee was given authority to sell the trust property, to invest the funds of the trust, and deal with the corpus unhampered by legal restrictions usually applicable to trustees, including the lending of money to or the purchase of property from the petitioner's estate without security and without liability for loss, provided, however, that before buying or selling securities the trustee should secure the approval of the petitioner's father, and after his death that of the petitioner, with right reserved to the petitioner to remove the trustee and substitute a successor upon written notice. It was provided that the petitioner's father might during his life amend or terminate the trust in whole or in part and change any beneficial interest thereunder. In case of termination of the trust under this power, the corpus was to be paid over to the petitioner if living, and if not then to anyone specified by his father. The petitioner also reserved the right after the death of his father, but in no event prior to 1932, to amend or terminate the trust, with the proviso, however, that he might not revest himself in any year with the corpus of the trust unless he had given notice in writing of his intention so to do not later than November 30th of the preceding year.

On December 1, 1931, the petitioner's father, Henry W. Corning, executed an amendment providing that the income of the trust during the life of the petitioner should be accumulated and added to the corpus, and changing from 1932 to 1937 the earliest date at which the petitioner after his father's death might terminate the trust. On August 8, 1933, the father executed a second amendment providing that sale, lease, investment or reinvestment of the trust estate until October 1, 1933, should be made by the trustee upon the direction of the petitioner, and that the trustee would be absolved from any and all responsibility for acts done under such direction. By a third amendment executed October 1, 1933, this power of direction by the petitioner was extended to July 5, 1935.

By the second trust instrument securities were transferred to one Shepherd as trustee in trust for the same beneficiaries. The father's powers therein were the same, and the reservations were identical except that the petitioner was unlimited as to time for revocation or amendment subsequent to his father's death. On January 17, 1933, the petitioner's father executed an amendment changing the provisions for payment by the trustee in its sole discretion of all or part of the income to petitioner so as to provide that the income in the sole discretion of the trustee be during the life of the petitioner accumulated or paid to the petitioner's wife, his mother, father, or any surviving descendants. Any income not so distributed was to be accumulated and set apart in a separate fund designated as "Fund A." Upon the petitioner's death Fund A was to be added to the corpus of the trust and the income from such corpus was to be paid to petitioner's wife for life and upon her death in equal shares to the petitioner's children, or per stirpes, to descendants, if any, of children not then living. By this amendment it was further provided that the father during his lifetime and the petitioner thereafter would have the right to change or modify any of the administrative provisions of the instrument and to change any beneficial interests thereunder and to revoke the trust in whole or in part by instrument in writing, and in the event of a revocation by the father the trustee was to pay over the principal, including Fund A, to the petitioner if living, if not to the father, or to such person or persons as the father might designate, provided, however, that during the petitioner's lifetime neither he nor the father was to have the power at any time prior to January 1, 1938, to revoke the trust either in whole or in part, or to direct any part of the income to be paid to the petitioner or to be applied to the payment of premiums upon policies of life insurance upon his life, and provided further that during the lifetime of the petitioner, and after January 1, 1938, neither he nor his father should have the power at any time during any taxable year to exercise any power not exercisable before that date, except that if during the month of December in the taxable year 1937, or of any taxable year thereafter, the father if living, or if not the petitioner, upon delivery to the trustee during such month of a written notice that such powers were desired after the first day of the next succeeding taxable year, that then during

such specified time, but neither prior thereto nor subsequently, the father if living, or if not the petitioner, was to have full power by written instrument to revoke the trust in whole or in part and to direct that any part of the income thereafter accruing be paid over or accumulated for future distribution to the petitioner, or be applied by the trustee to the payment of premiums upon insurance upon his life. It was further provided that neither the petitioner nor his father should at any time have the right to vest in himself title to any part of Fund A, and that the trustee should in no event pay over any of the principal of Fund A to the petitioner during his life, and in the event of revocation Fund A was to be paid by the trustee to the persons named by and in the proportions designated by the father if then living, or if not by his mother if living, but neither should have the power to direct that Fund A be paid to the petitioner.

■ None of the income of the two trusts for 1934 was distributed, but all of it was accumulated by the trustee and added to the corpus of the trust. It will be observed that in the case of each trust the right reserved by the petitioner to direct the return to him of the corpus of the trust was contingent. In the case of the first trust it was contingent upon the death of the father during the petitioner's lifetime, and the passage of time, and in the case of the second trust only upon the death of the father. Thus the petitioner's right to revest himself with the corpus of the trust was in each case subject to a contingency which might never arise. The first question that confronts us, therefore, is whether under the phrasing of § 166 the petitioner as grantor reserved to himself a vested power over the title of any part of the corpus of the trust. The respondent by Article 166-1, Regulation 86, undertook to interpret the section as providing for the taxation of income of a trust to the grantor if there was a power to revoke upon the lapse of a period of years or upon the happening of a specified event, regardless of whether such time be fixed, determinable, or certain to come. The petitioner contends that § 166 does not apply, and since not ambiguous may not be made to apply by regulation, because his right of revocation is subject to a contingency which has not yet happened and the happening of which is beyond his power to control. The Board sustained the Commissioner's interpretation of the statute.

and the validity of his regulation. It draws a distinction between the existence of a power to revoke and the right to exercise that power. Even though the right to exercise the power to revoke may be contingent, it says, nevertheless the existence of the power during the tax year is not contingent.

■ The distinction is difficult to apprehend. It is not consonant with generally accepted concepts of powers, for a power which is not presently exercisable and may never be capable of being exercised does not exist. 1, Sugden on Powers, 3d Amer. Ed., 371, 372. It is difficult, therefore, to comprehend that one may be vested with a power that is not presently nor with certainty exercisable in futuro.

The immediate precursor of § 166 was the similarly numbered section of the act of 1928. That section provided for the taxing of trust income to the grantor "Where the grantor of a trust has, at any time during the taxable year * * * the power to revest in himself title to any part of the corpus of the trust * * *." 26 U.S.C.A. § 166 note. This opened the door, if indeed it did not invite, the so-called "year-and-a-day" trusts, sustained in decisions such as Lewis v. White, D.C., 56 F.2d 390, and Langley v. Commissioner, 2 Cir., 61 F.2d 796. In the 1934 Act the words "during the taxable year" were eliminated. From this it is argued that the trust is revocable if the power to revest may be exercised by the grantor "at any time." It does not follow from this, however, that the Congress in the 1934 Act used either the term "power" or the term "vested" in a sense other than these terms were used in the 1928 or preceding Revenue Acts, and the committee reports of the Congress do not so indicate. The term "power" as used in corresponding sections of earlier acts has not been thought to extend to the reservation of a right conditioned upon a contingency that may never occur. Commissioner v. Stokes, 3 Cir., 79 F.2d 256; Higgins v. White, 1 Cir., 93 F.2d 357.

■ The test by which it is to be determined whether a power to recapture trust corpus is reserved by the donor is substantially similar under § 166 as it is under the death tax provisions. Cf. § 302(c), Revenue Act of 1924, 43 Stat. 304. In respect to the latter it has been held that where the grantor by the trust instrument left in himself no power to resume ownership, possession or enjoyment, except upon

a contingency in the nature of a condition subsequent, the occurrence of which was entirely fortuitous so far as any control, design or volition on his part was concerned, the grantor holds no right in the trust estate that is subject to testamentary disposition. His death simply puts an end to a mere possibility of reverter by extinguishing it, converting what is merely possible to utter impossibility. Helvering v. St. Louis Trust Co., 296 U.S. 39, 43, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239. There is no occasion here for the application of the principle that re-enactment of a statute after long continued construction of its terms, and the existence of a regulation uniformly applied, inferentially adopts the construction and gives validity to the regulation, since the phrasing of § 166 is clear and requires no extrinsic aids to interpretation. Moreover, there has been no uniform construction of it. Subsequent to decision in the present case the Board of Tax Appeals departed from its presently applied view of the existence of a vested power under similar trust provisions in the case of John E. Rovensky v. Commissioner, 37 B.T.A. 702, and that of Sophia P. O. Morton, 38 B.T.A., No. 58, and has still more recently expressly reversed itself in the case of Horace Andrews, Docket No. 89152, decided October 22, 1938, and in that of Emery May Holden Norweb, Docket Nos. 89291, 91798, 91826, decided December 28, 1938.

▮ The respondent now urges as an additional reason for sustaining the Board's decision that the power of revocation lodged with the father of the petitioner is vested in a person not having a substantial adverse interest within the meaning of § 166. While we do not subscribe to the view of the petitioner that this presents a new issue since it was not urged to the Board and so should not be considered here, because under settled rules the decision must be upheld if right for any reason, Anderson v. Atherton, 302 U.S. 643, 58 S.Ct. 53, 82 L.Ed. 500, we are not persuaded that the father fails to qualify as a person having an adverse interest. Under the terms of each trust the father could amend at any time and require distribution of all income to himself, might provide that upon revocation the corpus should go to him, and in any event would receive the corpus if he survived the petitioner. Moreover, under the second trust as amended he was one of the beneficiaries eligible to receive current income if the trustee so elected. This adverse interest is clearly substantial, and not merely colorable.

▮ There is no ground for support of the Board's determination that the present trusts are not taxable entities or that the instruments amount to no more than an assignment of income. Discretionary powers were vested with the trustee. It is not to be assumed that such powers would not be exercised, or that connivance between the trustee and the grantor would defeat the express purpose of the grants. Higgins v. White, supra.

▮ § 167 (a) (3) of the Act provides that if the trust instrument permits any part of the income of the trust to be applied to the payment of premiums upon policies of insurance upon the life of the grantor in his discretion, or that of any person not having a substantial adverse interest in the disposition of such income, then such part of the income of the trust shall be included in computing the net income of the grantor. It is urged, therefore, that since there is no prohibition against the application of Fund A of the second trust to the payment of life insurance premiums on the life of the grantor, and no prohibition in respect to accumulated income of the first trust after its amendment in 1931, § 167 is applicable. The trustee under each trust, however, is authorized to invest the trust fund in such manner and in such property as he may deem advisable, and this applies to Fund A, which becomes a part of the principal of the second trust. The payment of life insurance premiums on the life of the grantor is not an investment of the funds of the trust. There were no existing policies upon which premiums might be paid, and no part of the trust income was used for that purpose. In this situation we have held that no part of the income of the trust estate is taxable to the grantor. Commissioner v. Mott, 6 Cir., 85 F.2d 315, 106 A.L.R. 537. Without express or clearly implied authority in the trustee so to deal with income, there may be no application of § 167. We are unable to conclude that Todd v. Commissioner, 2 Cir., 82 F.2d 1020, is contra since there is no opinion and the terms of the trust instrument there construed are not disclosed.

The decision of the Board of Tax Appeals is reversed, and the cause remanded for further proceedings in conformity herewith.