McCUTCHIN v. COMMISSIONER OF INTERNAL REVENUE.

No. 11665.

Circuit Court of Appeals, Fifth Circuit.

Feb. 7, 1947.

WALLER, Circuit Judge, dissenting.

R. B. Cannon, of Fort Worth, Tex., for petitioners.

Melva M. Graney, Sewall Key, and J. Louis Monarch, Sp. Assts. to Atty. Gen., Douglas W. McGregor, Asst. Atty. Gen., J. P. Wenchel, Chief Counsel, Bureau of Internal Revenue, and John W. Smith, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for respondent contra.

Before McCORD, WALLER, and LEE, Circuit Judges.

McCORD, Circuit Judge.

The Commissioner determined income tax deficiencies for 1940 against Alex McCutchin and Alma McCutchin, husband and wife, by including in their community gross income the income from four trusts jointly established by taxpayers with community property in 1939. The Tax Court redetermined the deficiencies, holding that taxpayers were not taxable on income from two of the trusts in favor of their minor children, but that under Section 22(a) of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 22(a), and the Clifford Doctrine[1] they were taxable on the income of two trusts which named as beneficiaries Alex McCutchin's father and mother, J. A. and Carrie McCutchin.[2]

The Commissioner has not appealed from that portion of the Tax Court's decision which determined that taxpayers were not taxable on income from the trusts in favor of the children; and the only issue before us is that raised by taxpayers' petition attacking the holding that they were taxable on the income from the J. A. and Carrie McCutchin trusts.

McCutchin Investment Company, a Texas corporation, was the trustee designated in each of the four trust instruments. It was organized for the purpose of receiving and managing the four trusts and was chartered just three days prior to the creation of the trusts. Incorporators were Alex McCutchin and his wife and brother. The authorized capital stock of $25,000 was fully paid in cash, and Alex McCutchin owned all stock other than qualifying shares and was president of the corporation. The corporation had no employees or offices of its own.

Through his alter ego, McCutchin Investment Company, Alex McCutchin was for all practical purposes the active manager and trustee of each of the four trusts. Phipps v. Commissioner, 2 Cir., 137 F.2d 141. Moreover, each of the trust instruments contained provisions providing that the settlors could at any time designate a substitute trustee or trustees and that the settlor, Alex McCutchin, "may be and become one of the trustees."

The trusts were expressly irrevocable. The settlors divested themselves of all interest in the trust property, and only in the event of death of both their children without issue did they have a reversionary interest. By terms of each of the trust instruments, the trustee took possession of the trust property with "full and complete power in the management, control, and disposition of the trust property as * * * if it were the sole and absolute owner in fee simple * * *." The trustee was empowered to borrow money, execute mortgages and deeds, and lend money with or without security. The trustee was given the power to invest and reinvest funds,[3] and

---

[1] Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

[2] Findings and opinion of the Tax Court, 4 T.C. 1242.

[3] The trustee was expressly authorized and empowered "To invest and reinvest all funds coming into his hands as such Trustee and to change the form of any investment as frequently as it deems necessary or appropriate. In making investments, the Trustee shall not be restricted by any law now in existence, or here-

**474**

could hold and manage, exchange or sell the trust property without disclosing the trusteeship.

The trust instruments naming the father and mother of Alex McCutchin as beneficiaries contain benefit provisions materially different from the provisions of the trusts in favor of the two minor children. The trusts in favor of the children provide specifically for the accumulation, reinvestment, and ultimate distribution of income and corpus to the children, but the trusts in favor of J. A. and Carrie McCutchin provide for them to receive only such portions of trust income or corpus as "in its uncontrolled discretion, the Trustee deems appropriate for the needs and welfare of the said primary beneficiary." During the taxable year the father and mother of Alex McCutchin received nothing from the trusts, although net income, before depletion, attributable to their trusts approximated $28,000. No payment was made until the year 1942 when Mrs. Carrie McCutchin began drawing $50 per month, apparently for her *"needs and welfare."*

The trust instruments further provided that upon the death of the primary beneficiary (J. A. McCutchin in one trust, and Carrie McCutchin in the, other), the property and funds remaining in the respective trusts was to pass to the trusts for the minor children, if such trusts were still in existence, or to the children if their trusts had terminated. J. A. McCutchin died in 1940, and property in his trust vested one-half in each of the trusts for the minor children of Alex and Alma McCutchin.

We find no merit in taxpayers' contention that our decision in Hawkins v. Commissioner, 152 F.2d 221, 222, 163 A.L.R. 745, demands reversal of the decision of the Tax Court in this case. In the Hawkins Case the taxpayer was not, as he is here, the trustee. The Hawkins Case, in applying Sections 161, 166, and 167 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, §§ 161, 166, 167, recognized that facts other than those there presented might give rise

to taxability under Section 22(a) and the Clifford Doctrine. "We recognize that a trust for relatives can be so contrived, especially when the settlor makes himself the trustee, as to be a mere family arrangement to divide the income in order to reduce surtaxes, the settlor retaining such control and benefits as to leave him still the substantial owner." Cf. Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154.

We agree with the Tax Court that under the facts and circumstances of this case the McCutchin Investment Company must be considered the alter ego of Alex McCutchin, and that he must be considered the actual trustee of the trusts. Through his corporation, of which he was president, Alex McCutchin had full management of the trusts. Indeed, Alex McCutchin's relation with the trusts was so intimate, his powers so broad, that in the taxable year he was able to borrow personally and without security $23,500 from his corporation. Moreover, the record discloses that in the taxable year he personally joined with his corporation in a joint purchase of certain oil properties—a transaction in which he, personally, and his corporation, as trustee, derived profits in fair proportions.

■ Acting as trustee through his corporation, Alex McCutchin exercised broad managerial powers which he had provided for as a settlor of the trusts. In addition to these powers, he could exercise broad discretionary powers under the *"needs and welfare"* provisions of the trusts to withold or distribute trust income or corpus to his father and mother, the named beneficiaries. These broad powers of the settlor-trustee, considered in the light of the intimate family relationship, make it apparent that settlors' economic position was not materially changed by the creation of the trusts. All the facts and circumstances authorized a finding of tax liability on the part of petitioners for the income of the two questioned trusts under Section 22(a) and the Clifford Doctrine. Stockstrom v. Commis-

---

after adopted, regarding the character of investments which Trustees or other Fiduciaries may make, but may at all times invest in such lawful enterprises as the Trustee may deem appropriate, including joint enterprises, stocks, and securities of corporations, either organized or organizing, and any other lawful enterprise."

sioner, 8 Cir., 148 F.2d 491, certiorari denied 326 U.S. 719, 66 S.Ct. 23; Stockstrom v. Commissioner, 8 Cir., 151 F.2d 353; Edison v. Commissioner, 8 Cir., 148 F.2d 810, certiorari denied 326 U.S. 721, 66 S.Ct. 25.

■■ In a case of this kind, the Tax Court has full power to appraise all the facts and circumstances and make such final findings and conclusions as are warranted by the record. When such findings and conclusions are supported by the record evidence and are in accordance with law, they are binding on this court. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Trust of Bingham v. Commissioner, 325 U.S. 365, 65 S.Ct. 1232, 89 L.Ed. 1670. Certainly, in this case it cannot be said as a matter of law that the Tax Court erred in its appraisal of the facts and circumstances, or that a "clear-cut mistake of law" is apparent. Cf. Stockstrom v. Commissioner, supra.

The decision of the Tax Court is affirmed.

WALLER, Circuit Judge (dissenting).

There was no evidence taken in this case. No fact was in dispute. No factual issue is involved, but only the construction of the trust instruments in the light of the statutes passed by Congress and in the shadow of certain judicial off-shoots from the Helvering v. Clifford stalk.[1] It is necessary to determine only whether or not the Tax Court's construction of the J. A. and Carrie McCutchin trust agreements was in accordance with law.

The Tax Court concluded as a matter of law that the settlors were not taxable with the income derived from the trusts set up by them for their children, Jerry and Gene, wherein broader powers were conferred upon the trustee than in the trusts set up for J. A. and Carrie McCutchin, the father and mother respectively of Alex McCutchin, one of the grantors, concerning which the Tax Court found as a matter of law:

1. That the trusts were irrevocable.

2. That they were established for the benefit of the minor sons and aged parents of the grantors.

3. That the powers of management and control over the trusts if used for the advantage of the grantor to the disadvantage of the trusts "would have been subject to strict judicial control."

4. That the possession of the "fiduciary powers as here vested in the trustee does not in and of itself serve to subject the grantor to tax on the income of the trusts."

5. That the petitioner "has not dealt unfairly with the trusts in his capacity."

6. That the petitioner "has not utilized the trust properties to his own advantage."

7. That the power to alter or amend the trusts was not reserved in the settlors.

8. The father and mother were designated as "primary beneficiaries" and the sons as "secondary beneficiaries", and upon the death of a primary beneficiary his or her trust would terminate and all property and funds remaining in the trust would pass to, and vest in equal shares in, the two sons, Jerry and Gene, the secondary beneficiaries; or, if one of the sons be dead, then the trust would vest in the other if the deceased son left no descendants. If both sons died, and either of them left a descendant, the trust would vest in such descendant, but if neither son left any child or children, then, and only then, the trust would pass to and vest in the settlors, or in the survivor.

9. That during the life of the primary beneficiary, the trustee should pay over to him or her "from time to time such portions of the income of the Trust as, in its uncontrolled discretion, the Trustee deems appropriate for the needs and welfare of the said primary beneficiary." Any income was to be held by the trustee and reinvested if the needs and welfare of the primary beneficiaries did not require otherwise. The unexpended corpus, as well as the income, from the trusts so held would, at the death of the primary beneficiary, belong to the trusts set up for the grantors' sons, Jerry and Gene.

The Tax Court succinctly stated the issue now before us to be:

"The crux of respondent's argument seems to rest in the contention that the

[1] Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788.

petitioner retained the right to make or withhold distributions at will and this 'is equal to the reserved power of the tax-payer-settlor to shift the beneficial interest. Commissioner v. Buck, 2 Cir., 120 F.2d 775.' It is argued that in all four trusts petitioner could increase the estate of the secondary beneficiaries by withholding distributions of income and corpus during the lifetimes of the primary beneficiaries and that he could in the case of Carrie and J. A. McCutchin trusts eliminate the secondary beneficiaries entirely by distributing the whole corpus to the primary beneficiaries at any given time."

That court disagreed with the contentions of the Commissioner as to the applicability of the case of Commissioner v. Buck, supra, saying:

"Nor do we think it is comparable to Commissioner v. Buck, supra, where the grantor had reserved for his life, the power, at any time, and from time to time, to 'alter or amend in any respect whatsoever' the provisions relating to the distribution of the income and the principal of the trust estate."

I think that it is well to note another distinction, and that is that even if the settlors had withheld income from the mother or the father, it would have benefited them not in the least because such income was ultimately required to be paid over to the trust for the sons and irrevocably held by the trustee for the sons under their trusts which the Tax Court approved as not requiring the income to be taxable to the grantors.

Attention should be given also to the fact that although Alex McCutchin, one of the grantors, had a legal duty to support his minor sons (31 Tex.Jur. 1301, § 27), there was no legal duty upon him to support his parents (31 Tex.Jur. 1306, § 33). There is no evidence, nor finding, that the father and mother of the settlors needed any support from their son, nor is there any evidence in the record that the son ever had contributed to the support of his father and mother. On the contrary, the record shows that no payments were ever made under the trusts until the trustee began paying the mother $50.00 a month in July, 1942, some three years after the trusts were created. From this it appears that in the creation of the trusts for J. A. and Carrie McCutchin such settlor was not shown to have been relieving himself of any obligation to support his father and mother, and thereby securing some benefit from the income as if it were his own. Not only was the taxpayer not being relieved of either the actual or legal responsibility for the support of his father and mother, but the possibility of the settlors ever deriving any financial benefit was so remote as to be without tax consequences. The entire corpus, and such of the income from the trusts of the father and mother as was not paid out for the need or welfare of the father or mother was to be accumulated for the trusts of the sons. Both parents and both of the sons would have to die, and the sons would have to die without descendants before either the corpus or the income from the parental trusts could vest in the settlors.

Mention is made in the majority opinion of a loan by the corporate trustee in the sum of $23,500 to Alex McCutchin, one the grantors. The record does not show that this loan was from any of the trust funds and it was stated in oral argument that the loan was out of the capital of the corporation. This seems to prove nothing other than that the settlor, Alex McCutchin, had full domination and control of the corporation.

It seems that even though the settlors had, through the corporate trustee, the uncontrolled power to withhold income from the parents and accumulate it for the sons, or to pay out the income from the trusts of the parents and thereby deprive the sons of the remainder contrary to the purposes of the trusts, no financial or economic benefit could flow to the settlors in either event because there was no way for them to obtain the income or the principal except that both of the sons should die and neither of them should leave a child or children. Tax results do not flow in advance of such calamitous, unreal, and improbable possibilities.

It is exceedingly difficult for me to ignore certain conclusions that I deem fundamental, namely:

1. The Sixteenth Amendment to the Federal Constitution provides that "the Congress shall have power to lay and collect taxes on incomes, from whatever source derived * * *." It does not confer upon Congress the power to lay a tax upon the manager of property that produces income for someone else when that manager derives no income nor financial gain therefrom for himself. The Amendment does not authorize the laying of an income tax upon one person for the income derived solely by another.[2]

2. The establishment of a trust for the support of little children and fathers and mothers is not a vicious thing such as ought to be destroyed by the power of taxation.

3. Any spendthrift trust,[3] or trust set up for the support of minor children and aged parents—such as all of these trusts were—of necessity requires the giving of broad managerial powers to the trustee. To turn over to spendthrifts, babes in arms, or aged or infirm persons, valuable securities or large sums of money would be the height of folly and completely set at naught the entire purpose of the settlors to protect beneficiaries by such trusts. The Tax Court rightly observed in this case that:

"It is now clear that the possession of such fiduciary powers as here vested in the trustee does not in and of itself serve to subject the grantor to a tax on the income of the trusts. Armstrong v. Commissioner, 10 Cir., 143 F.2d 700; Estate of Benjamin Lowenstein, 3 T.C. 1133; David Small, 3 T.C. 1142."

4. Income taxes are intended to be assessed to the recipient of income or financial benefit. As the Tax Court said in this case:

"*There must be an economic gain or profit realized or realizable by the grantor before he may be taxed. Helvering v. Stuart,* 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154." (Emphasis added.)

Since 1916 Congress has specifically provided for the taxation of trusts, as such, and the idea to penalize by taxation those who would provide for the support of little children and the necessities of aged parents was not born in Congress. The tax gatherers, taking courage from Helvering v. Clifford, 309 U.S. 331, 60 S.Ct. 554, 84 L.Ed. 788, and aided by frequent—and often ill-considered—judicial deviations therefrom, have almost succeeded in turning the holdings, which were correct under the peculiar facts of that case, into a broad and fixed abnormality.

In the present case the trusts are irrevocable both as to corpus and as to income. The power of management is only

[2] In Eisner v. Macomber, 252 U.S. 189 (Text 207). 40 S.Ct. 189, 193, 64 L.Ed. 521, 9 A.L.R. 15⁻⁰, income from property was defined as essentially a gain or profit in itself of exchangeable value proceeding from the property, severed from it, and being derived, "that is, received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal * * *. Nothing else answers the description.

"The same fundamental conception is clearly set forth in the Sixteenth Amendment—'incomes, from whatever source derived' * * *."

In Crews v. Commissioner, 10 Cir., 89 F.2d 412 (text, 415), the Court said:

"Income from property is a gain, a profit, something of exchangeable value derived from the property, that is received or drawn by the recipient (the taxpayer) for his separate use, benefit and disposal. Eisner v. Macomber, 252 U.S. 189, 207, 40 S.Ct. 189, 64 L.Ed. 521, 9 A.L.R. 1570; Merchants' L. & T. Co. v.

Smietanka, 255 U.S. 509, 520, 41 S.Ct. 386, 65 L.Ed. 751, 15 A.L.R. 1305; Commissioner v. Independent Life Ins. Co., 6 Cir., 67 F.2d 470, 472, reversed on other grounds, Helvering v. Independent Life Ins. Co., 292 U.S. 371, 54 S.Ct. 758, 78 L.Ed. 1311; Fordyce v. Helvering, 8 Cir., 78 F.2d 525, 528; Central R. Co. v. Commissioner, 3 Cir., 79 F.2d 697, 101 A.L.R. 1448."

See also Sprouse v. Commissioner, 9 Cir., 122 F.2d 973, 143 A.L.R. 226; Buck v. McLaughlin, 9 Cir., 48 F.2d 135; Midland Mutual Life Ins. Co. v. Commissioner of Internal Revenue, 6 Cir., 83 F.2d 629.

In our own case of Hawkins v. Commissioner, 5 Cir., 152 F.2d 221, 222, we said, in speaking of income from trusts:

"It is of course to be understood that any such income can be taxed against an individual only if it is his income."

[3] Spendthrift trusts are valid in Texas. See 42 Tex.Jur. 704, 705, § 92.

those powers necessary in the management of a life estate put in trust for little children, spendthrifts, and the aged. The settlors received no financial gain or profit of any nature whatsoever and stood no reasonable chance of ever receiving any such benefit. In setting up the trust for the father and mother, the purpose in mind was only to provide for their necessities with no thought of building up for them an estate of inheritance. Consequently, they reserved to the trustee the power to determine those necessities, and the incidental result that any withholding of income from the mother and father would aid in the building of the intended estate for the youngsters is wholly insufficient, in my judgment, to fasten income tax consequences from the father's and mother's trusts upon the settlors. The grant by A of the rents, use, and profits of a building to B for life, with the residue and remainder over in fee simple to C upon the death of B, has never resulted in rendering A liable for the income from such property even though A might continue to manage the building.

I am of the view that the tax liability, if any, of the settlors under these irrevocable trusts must be measured by Sec. 167 of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1083.[4] If any part of the income of the trusts may be held or accumulated for the future distribution to the grantors or may be applied to the payment of premiums on policies of life insurance on the life of the grantors, then that part of such net income of the trusts should be computed in the net income of the grantors. Any basis for taxing to the settlor the income from an irrevocable trust estate which is not distributable to him, not used for the paying of premiums on insurance policies on his life, and from which he can have no financial gain or benefit, appears to be wholly a product of judicial legislation and entirely without Congressional sanction. The majority opinion seems to be contrary to views expressed by this Court in Hawkins v. Commissioner, supra, and indifferent to the statutory provisions as to the taxation of income from trusts.

---

4 Sec. 167, Revenue Act of 1938:

"(a) Where any part of the income of a trust—

"(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor; or

"(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor; or

"(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o), relating to the so-called 'charitable contribution' deduction);

then such part of the income of the trust shall be included in co•puting the net income of the grantor.

"(b) As used in this section, the term 'in the discretion of the grantor' means 'in the discretion of the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of the part of the income in question'."

See Hawkins v. Commissioner, 5 Cir., 152 F.2d 221; Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154.