WARREN H. CORNING AND MAUD E. CORNING, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

WARREN H. CORNING, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 47414, 47415. Filed August 18, 1955.

*Barring Coughlin, Esq.*, and *David A. Gaskill, Esq.*, for the petitioners.

*Alvin J. Ivers, Esq.*, for the respondent.

OPINION.

RICE, *Judge:* These consolidated proceedings involve deficiencies in income tax determined against the petitioners as follows:

| Petitioners | Docket No. | Year | Deficiency |
|---|---|---|---|
| Warren H. Corning | 47415 | 1946 | $26,639.49 |
| | | 1947 | 38,462.60 |
| Warren H. Corning and Maud E. Corning | 47414 | 1948 | $34,495.60 |
| | | 1949 | 35,066.38 |
| | | 1950 | 49,461.87 |

The sole issue to be decided is whether petitioner Warren H. Corning retained such a degree of dominion and control over a trust of which he was the grantor that its income is taxable to him under the provisions of section 22 (a) of the 1939 Code.

All of the facts were stipulated, are so found, and are incorporated herein by this reference.

Warren H. Corning (hereinafter referred to as petitioner) and Maud E. Corning are husband and wife, residing in Mentor, Ohio. Petitioner filed separate returns for 1946 and 1947, and he and his wife filed joint returns for 1948, 1949, and 1950. All such returns were filed with the collector of internal revenue for the eighteenth district of Ohio. The net income reported by these returns, not including any income from the trust here in issue, was as follows:

```
1946_____ $71,643.19
1947_____  89,766.64
1948_____ 121,311.02
1949_____ 127,858.78
1950_____ 155,437.57
```

On June 24, 1929, petitioner established a trust which was to terminate 21 years after the death of himself, his wife, and his parents, unless sooner revoked. At that time, petitioner was 27 years of age, married, but he and his wife had no children. Subsequently, during the years 1930 through 1943, five children were born to them. The trust instrument originally provided for the payment of the income to petitioner, in the discretion of the trustee, and designated various members of his intimate family group as beneficiaries of income and corpus after his death.

The original trustee was one S. Roswell Shepherd, a resident of New Jersey, but it was the intention of the parties that he should resign and be succeeded as trustee by the National City Bank of New York. This procedure was then frequently followed by such bank in instances where prospective grantors, who were not residents of New York State, wished to establish trusts not subject to the Rule Against Perpetuities in effect in New York. Pursuant to authority granted him in the trust instrument, Shepherd appointed the National City Bank as co-trustee on July 3, 1929; and, in the event of the subsequent resignation of the National City Bank, he designated the Farmers' Loan and Trust Company as successor trustee. Shep-

herd resigned as trustee on August 5, 1929. On January 20, 1930, the National City Bank of New York resigned as trustee and, pursuant to Shepherd's designation, was succeeded by the City Bank Farmers Trust Company (formerly the Farmers' Loan and Trust Company).

The following provision in the trust instrument authorized the grantor to remove the trustee and appoint a successor at his discretion:

I reserve the right to substitute at any time another and different Trustee for the one named in this instrument or appointed as herein provided and upon notification of such change, as evidenced by a written instrument signed by me and delivered to the person or institution then acting as Trustee hereunder, such Trustee shall transfer and deliver the property then held hereunder to such substituted Trustee, provided that such Trustee has received compensation to which he or it may be entitled and has been indemnified for any obligations he or it may have undertaken hereunder. The appointment of any trustee pursuant to the terms of this paragraph shall be effective upon its executing a written acceptance of such appointment and it shall thereafter have the same duties and powers as if originally appointed as trustee hereunder. Any Trustee hereunder may resign at any time and any remaining trustee or successor trustee shall thereupon become sole trustee hereunder.

The trust instrument originally provided the following powers of amendment and revocation:

I hereby authorize and empower my father, Henry W. Corning, during his life to amend or terminate this agreement in whole or in part and to change any beneficial interests hereunder by delivering to the Trustee an instrument in writing executed by him. In the event of the termination of this trust by my father the Trustee shall pay over the principal to me if I am then living or if I am not then living to my father or to such person or persons as he may designate in writing to the Trustee.

I reserve the right from time to time after the death of my father by an instrument in writing delivered to the Trustee to amend or revoke this agreement, in whole or in part, and to change any beneficial interest hereunder; provided, however, that I shall not have the power at any time during any taxable year within the meaning of the revenue laws of the United States to revest in myself title to any part of the corpus of the trust, except upon written notice delivered to the Trustee during the preceding taxable year.

Prior to his death on January 31, 1946, petitioner's father exercised his power to amend the trust several times. On January 17, 1933, he amended the dispositive provisions of the trust to provide that no current income was to be paid to petitioner prior to January 1, 1938, and that, thereafter, the current year's income was to be paid to petitioner only if the trustee had been notified in December of the preceding year that petitioner's father was to have the power to direct payment of such income. This amendment further provided that after the death of petitioner's father, petitioner was to have the power to direct that current income be paid to himself.

Petitioner's father amended the trust instrument once again on September 21, 1936, to provide that the power to amend or revoke was

to pass, upon his death, to the trustee rather than to petitioner. This amendment also prohibited the payment of income or corpus of the trust to petitioner. It states, in part, as follows:

I [grantor] hereby authorize and empower my father, Henry W. Corning, during his life, and, after his death, the Trustee, in the discretion of my said father or of such Trustee (but subject to the limitations hereinafter imposed) to change, modify, alter, or amend any of the provisions of this Agreement, or to change any beneficial interest hereunder, or to revoke this trust either in whole or in part, and upon any such revocation to designate the person or persons who shall receive the property so revoked and the amount of property to be received by such person or persons. No such revocation shall be effective unless the person or persons to receive the property are specifically designated in the instrument of revocation. Neither my father nor the Trustee, in the exercise of any powers granted hereunder, shall have any power or authority to make or effect any change, modification, alteration, amendment, or revocation which shall vest or revest in me or in my estate any part of the corpus, principal, or accumulated income of the trust or any title thereto or interest therein, or which shall direct or permit any part of the income of the trust, whether accumulated or thereafter accruing, to be distributed to me or to my estate or to be held or accumulated for future distribution to me or my estate or to be applied to the payment of premiums upon policies of insurance on my life. Neither my said father nor the Trustee shall have any power or authority, in the exercise of the powers granted hereunder, to direct or permit the payment or distribution of any income or corpus of the trust to any person or persons other than my wife, Maud E. Corning, my father Henry W. Corning, my mother, Edith W. Corning, or a lineal descendant of mine; or to vest in or grant to anyone other than said person or persons any interest in the trust estate; provided, however, that in the event there shall be a failure of lineal descendants of mine and if my wife, Maud E. Corning, shall then be dead, then my father or the Trustee may exercise such powers in favor of any person or persons other than myself or my estate as may be designated by my father, if then living, or, if he is not living, by my mother or, if neither is living, then by the Trustee. Neither my said father nor the Trustee shall have any power to change, modify, alter, or amend the provisions of the trust so as to grant to the Trustee or to any other person any powers to change, modify, alter, amend, or revoke the trust which may not be exercised by my said father or the Trustee.

In the exercise of the discretionary powers herein granted, the Trustee may (but shall not be required to) follow the suggestions of Edith W. Corning during her life and, after her death, of Allan C. House and, after the death of the survivor of them, the Trustee shall have the right to request such other person as in its judgment it deems competent to make inquiry as to such facts and circumstances as the Trustee shall deem requisite in the exercise of such discretionary power or with respect to the age, status, relation, identity, or financial circumstances of any person to whom the principal or income may be paid or distributed, and to inform the Trustee of the results of all such inquiries, and the Trustee may rely on such information in the exercise of the discretionary powers granted hereunder. Any action taken by my said father or by the Trustee hereunder shall be final and controlling and any decision made by my said father or the Trustee with respect to the exercise or nonexercise of such discretionary powers or with respect to the time or manner of the exercise thereof, shall fully protect my said father and the Trustee, and shall be conclusive and binding upon all persons interested in the trust.

By amendment dated December 8, 1942, petitioner's father relinquished the right to direct that income or corpus of the estate be paid to himself, his wife, or his estate.

On January 1, 1946, the beginning of the first year here in issue, the principal dispositive provisions of the amended trust instrument provided that during the life of the petitioner, the trustee was to distribute the income (but not the principal) in its discretion among the petitioner's wife and his descendants and to accumulate the undistributed income as a separate Fund A. Also during the petitioner's life, the trustee might in its discretion distribute the income or principal of Fund A among the same persons. Upon the death of the petitioner, Fund A was to be consolidated with the remaining principal and the income therefrom paid to the petitioner's wife. After the death of both the petitioner and his wife, the trust was to be divided into shares for their children. The income of each share was then distributable for the benefit of the child during his minority, in the trustee's discretion, the undistributed balance being accumulated until the child was 20. After that time a tenth of the income was to be accumulated and the rest distributed to him. Gifts over were provided in the event of the death of any child before receiving his share, the remaindermen in this case being the other descendants of the petitioner.

The administrative provisions of the trust gave to the trustee the usual powers to hold and invest the corpus of the trust. However, the trustee was required to secure the approval of petitioner's father before the purchase and sale of any securities and, after his death, petitioner's approval was required. The trustee was relieved of liability with regard to all purchases and sales made pursuant to such approval and, in addition, for all investments, however speculative, which it wished to make pursuant to the direction of petitioner's father and, after his death, pursuant to petitioner's direction. The trust instrument provided that, after the death of petitioner's father, the trustee was authorized to render periodic accountings to petitioner. Petitioner had the power to finally settle and adjust accounts and conclusively discharge the trustee from further liability. During the years in issue, the corpus of the trust and Fund A were invested in stocks and securities of corporations, the stock of which is not closely held and in which the holdings of the trust, either by themselves or in conjunction with the holdings of petitioners, are of no significance from the viewpoint of voting control.

Upon the death of petitioner's father on January 31, 1946, the power to amend or revoke the trust passed to the trustee. On December 31, 1946, the trustee, City Bank Farmers Trust Company, exercised its power of amendment by executing two amendments, the first of which reads, in part, as follows:

Notwithstanding any provisions relating to the disposition of income to the contrary which may be contained in said Trust Indenture as heretofore amended, the Trustee, until and including December 31, 1961, shall accumulate all income of the trust fund and all income of Fund A, so long as the Settlor, Warren H. Corning, shall be living during said period; in the event of his death prior to said date, then thereafter until and including December 31, 1961 the Trustee shall accumulate all income of the trust fund (including as part of the trust fund the principal of Fund A) so long as the Settlor's wife, Maud Eells Corning, shall be living during said period; if said Maud Eells Corning shall also die prior to December 31, 1961, then after the death of the survivor of the Settlor and his said wife and until and including December 31, 1961 the Trustee shall accumulate all income of the shares into which the principal of the trust fund (including the principal of Fund A) is directed to be divided upon the death of the survivor of the Settlor and his said wife, or of such of said shares as shall from time to time remain in the hands of the Trustee. The Trustee shall add all income accumulated as hereinabove directed, to the principal of the respective funds or shares from which such income is derived.

The second of these amendments states as follows:

Now, THEREFORE, City Bank Farmers Trust Company, as Trustee under said Trust Indenture, does hereby relinquish, give up and surrender until and including December 31, 1961, but not longer than during the lifetime of Warren H. Corning prior to said date, all power granted to the Trustee by Article 9 of said Trust Indenture or any other provision or amendment thereof heretofore made, to pay over to any of the beneficiaries under the Trust Indenture income of the trust fund, including the income of Fund A.

During the taxable years involved, no income of the trust was distributed, nor have any distributions been made from the trust since that time. Petitioner has not directly or indirectly borrowed from corpus or income of the trust.

Respondent determined the deficiencies herein on the basis that petitioner retained such dominion and control over the trust that its income is taxable to him under the doctrine of *Helvering* v. *Clifford*, 309 U. S. 331 (1940). He contends that petitioner's power to remove and substitute trustees without cause enabled petitioner to appoint himself trustee or to invoke his will upon any trustee then serving. Petitioner's power to substitute trustees did not become important, so far as this case is concerned, until the death of his father on January 31, 1946, for, at that time, the power to amend or revoke the trust passed from petitioner's father to the trustee. Respondent argues that, after this date, petitioner's control of the trustee enabled him to "sprinkle" income or corpus among various beneficiaries and that this retained right of beneficial enjoyment renders the trust's income taxable to him under the *Clifford* doctrine. Respondent also argues that the trust's income is taxable to petitioner by virtue of another phase of the *Clifford* doctrine, namely, the retention of excessive administrative powers over the trust through his control of a subservient trustee.

The so-called *Clifford* doctrine has been the subject of numerous cases, comprehensive regulations under section 22 (a) of the 1939 Code, and, finally, codification in the Internal Revenue Code of 1954.[1] All of these have attempted to demarcate the line of retained controls beyond which family property planners must not venture if trust income is not to be attributed to the grantor. However, the particular aspect of control with which we are here concerned has not been clearly delineated either in the regulations or the 1954 Code, although it has been touched on by several cases. It is clear that if the grantor of a family trust retains excessive administrative controls or if he retains the power to "sprinkle" income or corpus, he is to be considered as the owner of the property for tax purposes and its income is taxable to him under section 22 (a) of the 1939 Code. *Central Nat. Bank* v. *Commissioner*, 141 F. 2d 352 (C. A. 6, 1944); *Commissioner* v. *Buck*, 120 F. 2d 775 (C. A. 2, 1941). The power to allocate income and corpus is not objectionable when possessed solely by an independent trustee, and administrative powers exercised by a trustee are presumed to be exercised in a fiduciary capacity and not for the benefit of the grantor. Regs. 111, sec. 29.22 (a)–21 (*d*) and (*e*). However, if such powers are given to the trustee and the grantor retains the power to substitute the trustee without cause, are they then to be attributed to the grantor?

We think the instant case is governed by our decision in *Louis Stockstrom et al., Trustees*, 4 T. C. 5 (1944), affd. 151 F. 2d 353 (C. A. 8, 1945), where the grantor also had the power to substitute trustees without cause and the trust instrument provided that the trustee could, at his discretion, distribute income to the beneficiaries in such amounts and at such times as he might determine. We held that "this reserved power gave her [grantor] as complete control over the action of the trustees and over the distribution of trust income as if she herself had been the sole trustee." We recognize that a contrary result was reached in *Central Nat. Bank* v. *Commissioner, supra.* In that case, the grantor had established four substantially similar short-term family trusts. In one of these trusts, he reserved the right to direct the trustee with regard to sales and investments of trust funds. In the other three trusts, he provided that the trustee was to consult with him regarding sales and investments and, further, that he could substitute another trustee, so long as it was a trust company located in Cleveland, Ohio. The court held that the reserved right to control sales and investments in one trust rendered the income of that trust taxable to the grantor under the *Clifford* doctrine. However, acknowledgedly making a "hair-line" distinction, the court stated that the grantor's reserved right to substitute trustees in the other three

[1] Secs. 671–678.

trusts would not compel the trustees to follow his advice regarding sales and investments and, therefore, the income of such trusts was held not taxable to the grantor. In the subsequent affirmance of our *Stockstrom* case, the Court of Appeals for the Eighth Circuit cites but does not follow *Central Nat. Bank* v. *Commissioner*, *supra*. Moreover, as suggested by the court in *Central Nat. Bank* v. *Commissioner*, *supra*, it is possible that a corporate trustee with developed investment practices and policies will not readily accede to a grantor's contrary ideas regarding the selection of investments. But the allocation of income and corpus among members of the grantor's intimate family group, the principal item of control involved herein, is a function for which the grantor is better equipped than a corporate trustee. We think that a trustee, subject to removal without cause, would probably accede to the grantor's wishes in this respect. If the trustee did not, we believe that the grantor would probably replace it with one which would. We are, of course, not concerned in the instant case with whether the grantor has actually exercised such influence over the trustee, or with whether the trustee has, in fact, acted in a subservient manner for, in cases of this nature, the existence of retained powers of control must determine the tax consequences. *Shapero* v. *Commissioner*, 165 F. 2d 811 (C. A. 6, 1948), affirming 8 T. C. 104 (1947), certiorari denied 334 U. S. 844 (1948).

Despite all the modifications of the instant trust prior to the years in issue, petitioner's continued power to substitute trustees without cause, when considered together with the power of the trustee to change the beneficial enjoyment of income or corpus of the trust, gave to petitioner such a degree of dominion and control over the trust that its income must be taxable to him under section 22 (a) of the 1939 Code. The 1936 amendment giving the powers to amend and revoke after the death of petitioner's father, to the trustee rather than to petitioner, in practical terms, left petitioner in control of these powers through his control of the trustee. None of the beneficiaries ever had any vested interest in either income or corpus for, at all times, the power to amend or revoke had been reserved. Upon the passing of this power to the trustee on January 31, 1946, petitioner regained beneficial enjoyment of the corpus which he had previously transferred to the trust for he could then direct, through his control of the trustee, that either income or the corpus itself be distributed among the members of his family group as he might wish. Petitioner's income, without regard to the income from the trust, appears more than adequate for his normal needs during the years in issue and thus it was sufficient that he retain beneficial enjoyment over the trust corpus by being able to select the future recipients of the corpus and its income. *Commissioner* v. *Buck*, *supra*. The *Clifford* doctrine upholds substance against form; it disregards technical argu-

ments and considers the economic effect of the powers retained by the grantor. It directs its inquiry to powers retained by the grantor regardless of whether such powers have been exercised.

The power of the trustee, and therefore, of petitioner, as to how income or corpus should be allocated is completely discretionary under the trust instrument. The manner of allocation is limited by no reasonably definite external standards and, therefore, petitioner's reliance on *Anthony J. Drexel Biddle, Jr.*, 11 T. C. 868 (1948), is inapposite. In that case, the grantor also had the power to substitute trustees and the trustees had the power to allocate the principal among the beneficiaries. However, since this power was to be exercised subject to a reasonably definite external standard of necessity for the maintenance, benefit, and welfare of the beneficiaries, it was held therein that *Louis Stockstrom et al., Trustees, supra,* was distinguishable and that the trust did not come within the ambit of the *Clifford* doctrine. See also *Loughridge's Estate* v. *Commissioner*, 183 F. 2d 294 (C. A. 10, 1950), certiorari denied 340 U. S. 830 (1950) ; *Estate of Robert W. Wier*, 17 T. C. 409 (1951).

Petitioner argues that since the terms of the trust instrument refer to a successor trustee as "it", he is precluded from appointing himself as trustee and would be permitted to appoint only a corporate trustee in the event that he chose to substitute trustees. However, even if this interpretation were to be accepted (and the foregoing discussion has assumed the correctness of petitioner's argument on this point), it would not prevent petitioner from appointing as trustee a corporation in which he was the sole shareholder and from exercising control in this manner. See *McCutchin* v. *Commissioner*, 159 F. 2d 472 (C. A. 5, 1947), affirming 4 T. C. 1242 (1945) ; *Phipps* v. *Commissioner*, 137 F. 2d 141 (C. A. 2, 1943) ; and Regs. 111, sec. 29.22 (a)–21 (*d*). In any event, petitioner could substitute an independent corporate trustee after first ascertaining that such trustee would follow his directions. Should this corporate trustee subsequently fail to follow his instructions, petitioner could then replace it with another. Petitioner's power to substitute trustees was subject to no restrictions and, in practical terms, gave him the broad powers possessed by the trustee. Where the grantor, himself, acts as trustee, the administrative powers exercised by him as trustee may render the income of the trust taxable to him despite the fiduciary nature of his position. *Shapero* v. *Commissioner, supra.* We cannot say that a trustee who is subject to removal without cause is to be presumed to be able to resist the grantor's influence in the allocation of income or corpus among members of the grantor's family, for even if the trustee is, the grantor would probably substitute him with a trustee who would accede to the grantor's demands.

The income of the instant trust for the taxable year 1934 was held not to be taxable to petitioner in *Corning* v. *Commissioner*, 104 F. 2d

329 (C. A. 6, 1939), reversing 36 B. T. A. 301 (1937). That case involved the application of sections 166 and 167 of the 1939 Code and taxable years prior to that in which the trustee acquired the right to determine the allocation of income and corpus. The Court of Appeals for the Sixth Circuit made the following statement in its opinion, at page 333:

There is no ground for support of the Board's determination that the present trusts are not taxable entities or that the instruments amount to no more than an assignment of income. Discretionary powers were vested with the trustee. It is not to be assumed that such powers would not be exercised, or that connivance between the trustee and the grantor would defeat the express purpose of the grants. * * *

However, since this opinion appeared before *Helvering* v. *Clifford*, *supra*, and the subsequent development of the *Clifford* doctrine, as well as before acquisition by the trustee of the powers to amend or revoke, we do not consider it controlling on the issue of petitioner's continued control of the trust corpus.

On December 31, 1946, the trustee modified the trust instruments by two amendments. The first of these required the trustee to accumulate all income of the trust until 1962 and, under the second amendment, the trustee relinquished the power to pay over income until 1962, or the prior death of petitioner. Petitioner contends that the effect of these amendments was to deprive the trustee of control over the beneficial enjoyment of the trust for a 15-year period and that, even if the trustee's powers are to be attributed to him, he lacked such control over the allocation of income and corpus as would bring him within the proscribed *Clifford* area. However, these amendments relinquished only the power to pay over income for a 15-year period and not the power to designate the recipients of such accumulated income at the end of the period. The right of the beneficiaries to such income remained contingent and could be changed at the whim of the grantor. The income of the trust for this 15-year period remained subject to the grantor's disposition and is, therefore, taxable to him. *Stanley J. Klein*, 4 T. C. 1195 (1945), affd. 154 F. 2d 58 (C. A. 3, 1946), certiorari denied 328 U. S. 869 (1946). See Regs. 111, sec. 29.22 (a)–21 (*d*) (1).

*Decisions will be entered under Rule 50.*