KuNzig, Judge,
delivered the opinion of the court:
The single issue presented in this estate tax case is the includability in decedent Edward A. Tully, Sr.’s gross estate of death benefits paid directly to Tally’s widow by his employer. Plaintiffs (co-executors) move for partial summary judgment[1] claiming that no estate tax provision compels such treatment. Defendant’s cross-motion counters that the death benefits must be added to the gross estate as required either by section 2038(a) (1) or section 2033 of the Internal Revenue Code of 1954. We agree with plaintiffs and hold the sum at issue not includable in Tully’s gross estate.
The facts in this case are uncontested. Before his death, Tully was employed by Tully and DiNapoli, Inc. (T & D), a company owned 50% by decedent and 50% by Vincent P. DiNapoli. On July 1, 1959, Tully, DiNapoli and T & D entered into a contract whereby T & D promised to pay death benefits to the Tully and DiNapoli widows.[2] Later, in Octo *599 ber 1963, the same parties amended tiie 1959 agreement to limit the maximum 'amount of death payments to $104,000. On March 7, 1964, Tully died. T & D paid his widow the $104,000 called for in the contract.
Because the death benefits were paid directly by T & D to the widow, plaintiffs did not include this sum in Tully’s gross estate when they filed the estate tax return. On audit, the Internal Revenue Service (IRS) concluded that the $104,000 was part of Tully’s- gross estate and assessed an estate tax deficiency. Plaintiffs paid the deficiency, filed a refund claim and by timely petition filed in this court, brought the present action after the IRS disallowed their claim.
In essence, plaintiffs say section 2038 ('a) (l)[3] is inapplicable because Tully never transferred an interest in the death benefits, either at the time of their creation or thereafter, and even if he ¡had, he kept no power to ‘‘alter, amend, revoke or terminate” the interest. Further, plaintiffs assert, decedent had no “interest” in the death benefits at the time of Ms death within the meaning of estate tax section 2033.[4] Defendant takes an opposing viewpoint. It contends that Tully made a transfer of Ms interest in the benefits prior to Ms death, but kept a power to “alter, amend, revoke or terminate” such transfer until the time of Ms death. Defendant claims this power requires addition of the benefits to Tully’s gross estate under section 2038(a)(1). Alternatively, the Government argues, Tully still had sufficient “interest” in the benefits at the time of Ms death to force the $104,000 into his gross estate under section 2033.
The Government relies only on sections 2038(a) (1) and 2033, and no others, in its argument that the death benefits at issue here are includable in Tully’s gross estate.
*600 Defendant’s contentions, specifically its argument that sections 2038(a) (1) and 2033 must be treated as virtually identical, suggest at the outset that we consider the basic philosophy of estate tax law. As enacted by Congress, the primary purpose of the estate tax is to tax “the transfer of property at death.” C. Lowndes & R. Kramer, Federal Estate and Gift Taxes § 2.2 (3d Ed. 1974). If sufficient incidents of ownership in an item of property are given away before death, no tax will be imposed. Since all estate tax statutes fare directed at taxing property transferred at death, it can become easy to confuse their operation or to apply them in an overlapping fashion.
'Within this context, the two estate tax sections involved in the instant case, 2038(a) (1) and 2033, both impose a tax on property transferred at death. However, they are directed at two different situations. Section 2038(a) (1) is specific in its terms. It taxes property which an individual has given away while retaining enough “strings” to change or revoke the gift. Section 2033 [5] is more general in its approach, and taxes property which has never really been given away at all.
Certain of defendant’s arguments misconstrue this basic difference between section 2038(a) (1) and section 2033. By suggesting that the same “controls” over property which might represent a section 2038(a) (1) “power” can also be viewed as a section 2033 “interest,” the Government attempts to turn section 2033 into an estate tax “catch all.” This was not the intent of Congress in enacting section 2033. Congress has provided a “catch all” in the income tax statutes.[6] It has not done so in the estate tax area. Estate of Spiegel v. Commissioner, 335 U.S. 701, 714 (1949). Cf. Helvering v. Safe Deposit & Trust Co., 316 U.S. 56 (1942); United States v. Field, 255 U.S. 257 (1921).[7] Therefore, defendant’s efforts to treat the two sections as virtually identical by the “catch all” method are misplaced.
*601 In accordance with, this analysis, our inquiry takes two avenues. First, did Tully transfer the death benefits but keep a power to change or revoke them until the time of his death? If so, section 2038(a) (1) applies. Second, did Tully have an “interest” in the benefits at his death? If he had an “interest,” section 2033 applies.
We find that Tully effectively transferred his interests in the death benefits before his death, determine that he did not keep any significant powers to “alter, amend, revoke or terminate” the transfer and conclude that he had no “interest” in the 'benefits at the time of his death. We, therefore, hold that the death benefits at issue here were not includable in Tully’s gross estate.
I. Section 2038(a) (1) :
Defendant argues that Tully transferred an interest in the death benefits at some point prior to his death and kept a section 2038 (a) (1) power to “alter, amend, revoke or terminate” the enjoyment of the benefits after the transfer until his death. Plaintiffs counter that there was no “transfer” in the 1959 contract or thereafter because decedent never had any interest in the benefits which he could transfer. Even if a transfer is found, plaintiffs claim Tully did not keep a section 2038(a) (1) “power” after such transfer.
Contrary to plaintiffs’ position, Tully did transfer an interest in the death benefits to his wife by executing the 1959 contract. In ¡one of the three death benefit plans at issue in Estate of Bogley v. United States, 206 Ct. Cl. 695, 514 F. 2d 1027 (1975), the decedent (an employee, officer, director and 34% Shareholder) entered into an enforceable contract with his employer. In consideration of decedent’s past and future services, the employer promised to pay decedent’s 'widow or the estate two years’ salary after his death. We 'found that where decedent was married at the time of the execution of the contract he “* ’* * did make a transfer of his interest to his wife during his lifetime by making the contract with [the employer].” Bogley, supra, 206 Ct. Cl. at 715, 514 F. 2d at 1039. In the instant case, the basic facts are nearly identical. The 1959 agreement looked to Tully’s past and future services to T & D for consideration. The benefits here were also pay *602 able to the “widow” and decedent was married at the time of the 1959 contract. Tully in substance, if not in form, made a gift of a part of his future earnings to his wife.
However, within the meaning of section 2038 (a) (1), Tully did not keep a power to “alter, 'amend, revoke or terminate” the death benefit transfer after the 1959 Contract. There was no express reservation of such power in either the 1959 or 1963 contracts and no indication in the record of any other express agreements in which Tully obtained a section 2038 (a) (1) power.
The Government implies that Tully’s 50% stock ownership of T & D gave him unfettered power to change the death benefit plan to suit 'his own tastes. The facts do not bear this out. To the contrary, Tully’s every movement could have been blocked by the other 50% shareholder. Tully did not have individual control of T & D and could not, by himself, alter the terms of the death benefit agreement.[8] As stated by the court in Harris v. United States, 29 Am. Fed. Tax R. 2d 1558 (C.D. Cal. 1972), section 2038(a) (1) powers must be demonstrable, real, apparent and evident, not speculative. See also, Hinze v. United States, 29 Am. Fed. Tax R. 2d 1553 (C.D. Cal. 1972). We agree with this test and find Tully did not have a section 2038 (a) (1) power to “alter, amend, revoke or terminate” through his 50% stock ownership in T & D at the time of his death.
Moreover, the death benefits are not includable in Tully’s gross estate despite the fact that Tully might have altered, amended, revoked or terminated them in conjunction with T & D and DiNapoli. A power to “alter, amend, revoke or terminate” expressly exercisable in conjunction with others falls within section 2038(a) (1), but “power” as used in this section does not extend to powers of persuasion. If section 2088(a)(1) reached the possibility that Tully might con *603 vince T & D and DiNapoli to change the death benefit plan, it would apply to speculative powers. Section 2038(a)(1) cannot be so construed.[9] Harris, supra; Hinze, supra. In addition, if section 2038(a)(1) applies to situations where an employee might convince an employer to change 'a death benefit program, it would sweep all employee death benefit plans into the gross estates of employees. It would always be at least possible for an employee to convince the employer that it would he to their mutual benefit to modify the death benefit plan. In light of the numerous cases where employee death benefit plans similar to the instant plan were held not includable in the employee’s gross estate,[10] we find that Congress did not intend the “in conjunction” language of section 2038 (a) (1) to extend to the mere possibility of bilateral contract modification. Therefore, merely because Tully might have changed the benefit plan “in conjunction” with T & D and DiNapoli, the death benefits are not forced into Tully’s gross estate.
Tully also did not obtain a section 2038(a)(1) “power” from the remote possibility that he could have altered the amount of death benefits payable to his widow by changing his compensation scheme. The death benefits here were to be paid based on decedent’s annual salary. From this, defendant reasons that up until the time of his death, Tully could have accepted lesser compensation or terminated his employment in order to alter or revoke the death benefits.[11] In practical terms, we reject this possibility. This is not a factor *604 which rises to the level of a section 2038 (a) (1) “power.” An employee might 'accept lesser compensation or terminate his employment for a myriad of reasons, but to conclude that a motive for such action would be the death benefit plan itself is not only speculative but ridiculous. And we have already made clear that a section 2038(a)(1) “power” cannot be speculative, but must be demonstrable, real, apparent and evident. Harris, supra; Hinze, supra. In addition, modification of Tully’s employment contract would have required the cooperation of T & D or a breach by Tully. Neither of these two events constitutes a section 2038(a)(1) “power.” Further, it is a common practice to “peg” employee death benefit plans to the employee’s salary. To our knowledge, no court has ever held that- such practice subjects death benefits to inclusion in the employee’s gross estate. On the contrary, in Estate of Whitworth v. Commissioner, 22 CCH Tax Ct. Mem. 177 (1963), the court concluded that although the decedent could have terminated his widow’s benefits by leaving his employ or by breaching his employment contract, the death benefits at issue were not includable in his estate as a section 2038 (a) (1) revocable transfer. Due to the practicalities of death benefit contracts and using the rationale of the Whitworth case, we hold that no section 2038(a)(1) power was created by the remote possibility that Tully might have changed the amount of death benefits prior to his death.
Finally, Tully did not retain a section 2038 (a) (1) “power” to revoke or terminate the transfer to his wife by virtue of the possibility that he could have divorced her. The contract called for T & D to make the death benefit payments to Tully’s widow. It might be argued that Tully could have divorced his wife to terminate her interest in the death benefits,[12] but again such an argument ignores practicalities, reduces the term “power” to the speculative realm, and is not in accord with prior cases. In reality, a man might divorce his wife, but to assume that he would fight through an entire divorce process merely to alter employee death *605 benefits approaches the absurd. Further, in various cases, death benefits payable to the “widow”, Estate of Porter v. (commissioner, 442 F. 2d 915 (1st Cir. 1971), or “wife”, Estate of Kramer v. United States, 186 Ct. Cl. 684, 406 F. 2d 1363 (1969), were not thereby held includable in the gross estate.[13] The possibility of divorce in the instant situation is so de minimis and so speculative rather than demonstrative, real, apparent and evident that it cannot rise to the level of a section 2038(a)(1) “power.” Harris, supra; Hinze, supra. Thus the use of “widow” in the death benefit contract did not give Tully a real power to revoke or terminate the death benefit transfer to his wife.
In short, in the 1959 contract Tully transferred certain interests to his wife by obtaining T & D’s promise to pay death benefits. While it may be argued that Tully kept a certain de minimis association with the death benefit plan, such association never rose to the dignity of a power to “alter, amend, revoke or terminate” the transfer. In Kramer, supra, we held that a substantially similar plan did not create section 2038(a)(1) powers. The facts here are not significantly different. Therefore, section 2038(a)(1) does not operate to compel inclusion of the death benefits in decedent’s gross estate.
II. Section 2033:
Nor does section 2033 require addition of the benefits to Tully’s gross estate. The Government argues that corporate control, “pegging” the benefits to Tully’s salary, and naming “widow” as beneficiary constituted section 2033 “interests” kept by Tully until his death. We found above that these facts did not give rise to a section 2038(a) (1) “power.” We also determine that they did not create a Section 2033 “interest.”
Having found that Tully transferred the death benefits to his wife and that he could not reach them for his own use, he could not have kept a section 2033 “interest.” The de minimis associations Tully may have still had with the benefits are *606 not strong enough to force a conclusion that decedent never transferred ¡his interests in the benefits to his wife.
Defendant would use section 2033 ‘as a “catch all.” The simple answer to this is that section 2033 is not a “catch all,” Spiegel, supra, but applies to situations where decedent kept so much control over 'an item of property that in substance he still owns the property. “Interest” as used in section 2033 connotes a stronger control than “power” as used in section 2038 (a) (1). If Controls over property cannot rise to the dignity of section 2038 (a) (1) “powers” they equally cannot create section 2033 “interests.” In the instant case, having failed to establish that corporate stock ownership, “pegging” the benefits to Tully’s salary and naming the “widow” 'as beneficiary created section 2038(a)(1) “powers,” defendant equally fails to demonstrate that the same facts create’ section 2033 “interests.”
In summary, we have considered an employee plan in which the employee transferred death benefits to his wife, but kept until his death certain tangential associations with the plan. These cle minimis associations did not rise to the level of section 2038(a) (1) “powers” to “alter, amend, revoke or terminate” the transfer, 'and did not constitute “interests” sufficient to force the conclusion that section 2033 applies. Therefore, the death benefits at issue here were not includable in Tully’s gross estate.
Accordingly, plaintiffs’ motion for partial summary judgment is granted and defendant’s cross-motion for partial summary judgment is denied. The case is remanded to the Trial Judge for determination of the amount due plaintiffs under Eule 131 (c) by reason of this judgment and such other action as may be necessary, not inconsistent with the above.

 The parties’ cross-motions for partial summary judgment involve only one of three issues in this lawsuit. The other two issues, valuation of stock held by decedent and taxability of certain inter vivos gifts are not now before the court.

 The relevant portion of the contract provided :
“üpon the death of the SECOND [Tully] or THIRD [DiNapoli] PARTIES hereto, his widow, if any, shall become entitled to, and the CORPORATION hereby agrees to pay to her, a death benefit equal in amount to twice the annual salary which the CORPORATION had paid to her deceased husband for the year immediately preceding the date of his déath.”

 “The value of the gross estate shall Include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer * * * where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (In whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revolee, or terminate. * * *” Int. Rev. Code of 1954, § 2038(a) (1). (Emphasis added).

 “The value of the gross estate shall include the value of all property to the extent of the interest therein of the decedent at the time of his death.” Int. Rev. Code of 1954, § 2033. (Emphasis added).

 Section 2033 applies to “interests” in property, but interest is not defines in the statute.

 Int. Rev. Code of 1954, § 61 provides: “* * * [G]ross income means all income from whatever source derived. * * *”

 Spiegel construed the 1939 equivalent of section 2033. Congress has not added any “catch all” language to the estate tax since the enactment of the earlier section.

 In effect, defendant asks us to hold that corporate control constitutes a section 2038(a)(1) “power.” In United States V. Byrum, 408 U.S. 125 (1972) (Justices White, Brennan, and Blackmun dissenting), the Supreme Court rejected the Government’s argument that the corporate control could provide a section 2036 right to alter beneficial enjoyment of trusts. The Court specifically noted the vagaries and uncertainty which 'a corporate control test would produce in the estate tax area. Id. at 138, n. 13.
Since we find that Tully did not have control of T & D, we need not reach the equally complex question of whether corporate control might give rise to a section 2038(a) (1) “power.”

 There is no evidence in the record that the 1963 modification resulted from a demonstrable, real, apparent and evident power by Tully to coerce DiNapoli and T & D to effect the change. At best, it appears that the parties were mutually convinced that the clarification was desirable.

 See, e.g., Estate of Kramer v. United States, 186 Ct. Cl. 684, 406 P. 2d 1363 (1969); Hinze, supra; Harris, supra; Molter v. United States, 146 P. Supp. 497 (E.D. N.Y. 1956); Estate of Barr v. Commissioner, 40 T.C. 227 (1963).

 Defendant does not argue that the failure to set a specific dollar amount on the death benefits gave Tully a section 2033 (a)(1) “power.” Instead it contends this represents a section 2033 “interest" held by decedent until his death. Such position is misplaced. Section 2033 is not a “catch all,” but taxes property over which the owner has kept so much control that he has never really transferred it. In this context, the only control that Tully might have had over the death benefits by virtue of the failure to set a specific dollar figure was an ability to change or terminate the payments. This is a section 2038 (a) (1) “power.” Having once given away the .benefits, he could not have obtained any part of the benefits to spend for his own use or any one else’s use and, therefore, did not have a section 2033 “interest.”

 Again, the Government fails to make such argument in the section 203S(a) (1) context. Rather it contends that this possibility left Tully with a section 2033 “interest” in the benefits until his death. Since the possibility of divorce might represent a section 2038(a) (1) ‘power”, we consider it in this context despite defendant’s failure so to argue.

 In Krwmer, the death benefits were payable to “wife, Carrie Kramer.” Using the same argument, since Kramer could have divorced his wife, the Government would appear in the instant case to be disputing the Kramer section 2038(a) (1) rationale. Tet the Government did not so argue.