ESTATE OF HELEN S. WALL, DECEASED, KATHRYN H. BARTH, PERSONAL REPRESENTATIVE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 15311–91.          Filed October 12, 1993.

---

*Gordon H. Smith, Jr.,* for petitioner.*
*J. Paul Knap,* for respondent.

## OPINION

NIMS, *Judge:* Respondent determined a $44,948 deficiency in the Federal estate tax due from the Estate of Helen S. Wall. The single issue for decision is whether property held by three irrevocable inter vivos trusts created by the decedent, Helen S. Wall (Mrs. Wall), is includable in her gross estate under section 2036(a)(2) or section 2038(a)(1) because in creating the trusts Mrs. Wall reserved the right to remove the sole trustee, a corporation, and appoint a successor corporate trustee. (All section references are to sections of the Internal Revenue Code in effect at the time of Mrs. Wall's death.)

All of the facts have been stipulated and are found accordingly.

At the time the petition was filed, Kathryn H. Barth, the personal representative of the Estate of Helen S. Wall (petitioner), resided in Boulder, Colorado. Mrs. Wall died on October 7, 1987, a domiciliary of Wisconsin. Petitioner was appointed personal representative by the Circuit Court of Wisconsin, Marathon County, on December 8, 1987.

Petitioner filed a Federal estate tax return (Form 706) on October 12, 1988, and a corrected Form 706 on January 16, 1989. The assets of the three trusts created by Mrs. Wall were not included as assets in the gross estate on either the original Form 706 or the corrected Form 706. However, gifts from Mrs. Wall to these trusts, in the total amount of $101,015, were included in the adjusted taxable gifts reported on the two Forms 706.

On December 19, 1979, Mrs. Wall executed three instruments establishing the three previously mentioned

---

*Brief amicus curiae was filed by *James M. Trapp* as attorney for the American College of Trust and Estate Counsel.

trusts, they being known as the Kathryn Barth Trust, the Sarah Ann Barth Trust, and the Amy Elizabeth Barth Trust, respectively.

Kathryn Barth is Mrs. Wall's daughter. Sarah Ann Barth and Amy Elizabeth Barth are Mrs. Wall's granddaughters.

Mrs. Wall transferred additional assets to the Kathryn Barth Trust in 1980. She transferred additional assets to the Sarah Ann Barth Trust and the Amy Elizabeth Barth Trust in 1984 and 1986. Mrs. Wall filed Federal gift tax returns reporting these transfers.

The trust agreement establishing the Kathryn Barth Trust provides, in part, that

The Grantor or the beneficiary, Kathryn Barth, may remove the Trustee on written notice and appoint a successor Trustee. However, any successor Trustee must be a corporation qualified to conduct a trust business in the United States and be completely independent from the Grantor.

The trust agreement also provided that "She may at her pleasure deposit additional assets." Mrs. Wall retained no other power over or interest in the Kathryn Barth Trust.

The trust agreements establishing the Sarah Ann Barth Trust and the Amy Elizabeth Barth Trust provide, in part, that

The Grantor, during her lifetime, may substitute Trustees, but any successor Trustee shall be other than the Grantor or any firm or corporation in which the Grantor has an interest, and shall, in all events, be an independent corporate trust company.

The trust agreements provided that "Additional property may from time to time be transferred by the Grantor or by any other person." Mrs. Wall retained no other power over, or interest in, either the Sarah Ann Barth Trust or the Amy Elizabeth Barth Trust.

Mrs. Wall had no power to appoint herself as trustee of any of the three trusts. The initial trustee of all three trusts, First Wisconsin Trust Co. (First Wisconsin or the bank), has held the position of trustee of the three trusts continuously from its initial appointment to the present time. At no time during her life or by will did Mrs. Wall attempt to remove or change the trustee.

The bank is a large and reputable trust company which has been doing business in Wisconsin for over 50 years. In

the operation of its trust business it is subject to the laws of Wisconsin. At no time did Mrs. Wall have any significant ownership interest in the bank.

The bank as trustee of the Kathryn Barth Trust had, among other things, the following power:

The principal and income of the trust may be expended by the Trustee in its sole discretion to or for the benefit of my daughter, Kathryn Barth, until final distribution is made as provided herein.

The Sarah Ann Barth Trust contains, among other things, the following provision:

The Trustee shall hold, manage, invest, and reinvest the trust property for the sole benefit of Sarah Ann Barth, granddaughter of the Grantor, born April 26, 1968, hereinafter called the "Beneficiary," upon the following terms:

(a) The Trustee may distribute to, or apply for the sole benefit of the beneficiary until she attains the age of 21 years, so much of the income and principal, at such time or times and in such amounts and manner, as the Trustee, in its sole discretion, shall determine. Any amount which the Trustee shall determine not to use may be accumulated as income or may be added to the principal, as the Trustee shall deem best.

(b) When the beneficiary reaches the age of 21 years, she shall have the power, by an instrument in writing signed by her and delivered to the Trustee within six months after her 21st birthday, to compel the immediate distribution to her of all of the then accumulated income and principal of this trust. If no such instrument is delivered within the time specified herein, then the trust shall continue until the beneficiary reaches the age of 30 years. During the continued period of this trust, the Trustee shall pay to or apply for the benefit of the beneficiary all of the net trust income at least annually. During the continued period of this trust, principal may be expended by the Trustee in its sole discretion for the benefit of the beneficiary. When the beneficiary reaches age 30, the trust shall terminate and the principal and income remaining in the trust shall be distributed to her.

The Amy Elizabeth Barth Trust contains a similar provision.

The three trust agreements recite that they are to be governed by the laws of Wisconsin.

The relevant statutory provisions are as follows:

SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any

period not ascertainable without reference to his death or for any period which does not in fact end before his death—

\* \* \* \* \* \* \*

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

SEC. 2038. REVOCABLE TRANSFERS.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—

(1) Transfers after June 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished during the 3-year period ending on the date of the decedent's death.

Thus, section 2036(a)(2) sweeps into the gross estate the value of any transferred property as to which the decedent has retained a singly or jointly held power to designate the person or persons who are to have possession or enjoyment of the property or the income from the property. In the case before us we must decide whether Mrs. Wall's retained power to change the corporate trustee is to be equated with a power to designate the persons who are to possess or enjoy the property or the income therefrom.

Section 2038(a)(1) requires the inclusion in the decedent's gross estate of the value of any interest in any transferred property where the "enjoyment" thereof was subject at death to any change through the exercise of a solely or jointly held power to alter, amend, revoke, or terminate. Assuming, as we think we must, that Mrs. Wall's power to change the corporate trustee was a power to alter, amend, revoke, or terminate, we must answer the question of whether this power was such that it could affect the enjoyment of the property.

Section 20.2036-1(b)(3), Estate Tax Regs., provides in part that

if the decedent reserved the unrestricted power to remove or discharge a trustee at any time and appoint himself as trustee, the decedent is considered as having the powers of the trustee.

Petitioner argues that by negative inference this regulation is saying that if the decedent did not reserve the unrestricted power to appoint herself under such circumstances, she is not considered as having retained the powers of the trustee.

Section 20.2038-1(a)(3), Estate Tax Regs., provides in part that

if the decedent had the unrestricted power to remove or discharge a trustee at any time and appoint himself trustee, the decedent is considered as having the powers of the trustee.

Petitioner makes the same negative inference argument as to this regulation.

In the Kathryn Barth Trust the trustee is authorized "in its sole discretion" to "expend" principal and income for the benefit of Kathryn Barth. In each of the two grandchildren trusts the trustee "in its sole discretion" may pay or apply income and principal to or for the benefit of the beneficiary while she is a minor, and then is required to pay or apply income to or for the beneficiary until she attains age 30. The trustee also has sole discretionary power to expend principal for the granddaughter's benefit. We accordingly proceed on the basis that the trustee's discretionary powers are essentially unlimited by ascertainable standards spelled out in the respective trust agreements.

Respondent argues that we should apply the rationale of Rev. Rul. 79-353, 1979-2 C.B. 325, to the facts of this case. Rev. Rul. 79-353 addresses the precise question presented here.

Rev. Rul. 79-353, *supra,* first notes that the power to distribute income and principal, unlimited by an ascertainable standard, when reserved by a decedent-grantor will result in inclusion of the subject property in the decedent's gross estate under sections 2036(a)(2) and 2038(a)(1), and this is true even though the grantor only retains this power in the capacity of trustee.

In *United States v. O'Malley,* 383 U.S. 627 (1966), cited for the foregoing proposition in the ruling, the Supreme Court held that where the settlor, as one of three trustees, reserved and was vested with the power to distribute income or accumulate it and add it to principal, section 2036(a)(2) required the inclusion of the accumulated income in the settlor's gross estate.

The revenue ruling goes on to point out that the courts have also held that the reservation by the settlor of the power to substitute himself as trustee is equivalent to reservation by him of the trustee's powers. Therefore, even where the settlor has not actually appointed himself trustee but has retained the power to do so, and where the trustee has significant powers unlimited by an ascertainable standard in the trust agreement (as is true in the case before us), the trust property will be included in the gross estate under section 2036 or 2038. The ruling cites *Estate of Farrel v. United States,* 213 Ct. Cl. 622, 553 F.2d 637 (1977); *Mathey v. United States,* 491 F.2d 481 (3d Cir. 1974); *Van Beuren v. McLoughlin,* 262 F.2d 315 (1st Cir. 1958); and *Loughridge's Estate v. Commissioner,* 183 F.2d 294 (10th Cir. 1950), affg. in part, revg. in part 11 T.C. 968 (1948).

To this point in the ruling (and in respondent's argument on brief), the parties and this Court are in agreement. However, after citing two prior rulings of dubious relevance, Rev. Rul. 79-353, *supra,* and respondent's argument next ask us to take a quantum leap for which the prior discussion has not prepared us. The ruling holds that "Thus, reservation by the settlor of the power to remove the trustee at will and appoint another trustee is equivalent to reservation of the trustee's powers." Rev. Rul. 79-353, 1979-2 C.B. at 326.

The foregoing conclusion disregards the fact that the discussion which preceded it dealt exclusively with a settlor's reserved power to appoint himself. But the ruling does cite and discuss two cases which, it is argued, support the holding. The first of these is *Corning v. Commissioner,* 24 T.C. 907 (1955), affd. per curiam 239 F.2d 646 (6th Cir. 1956). The second case is *Van Beuren v. McLoughlin,* 262 F.2d 315 (1st Cir. 1958).

*Corning* involved the question of whether a settlor of an inter vivos trust retained sufficient control over the trust principal and income so as to require taxation of the income to him under the so-called *Clifford* rules (the taxable years in question predated the 1954 Code). See *Helvering v. Clifford,* 309 U.S. 331 (1940). In establishing the trust the settlor-taxpayer arranged for a prominent New York trust company to serve as trustee, giving the trustee the power to change the beneficial interests. One of the trust provisions stated that "I [taxpayer] reserve the right to substitute at

any time another and different Trustee for the one named in this instrument or appointed as herein provided." *Corning v. Commissioner,* 24 T.C. at 909.

In deciding the *Corning* case the Court accepted, for the sake of argument, the taxpayer's contention that since the terms of the trust instrument referred to a successor trustee as "it", the taxpayer was precluded from appointing himself as trustee. The Court went on to observe that, assuming the correctness of the taxpayer's contention, "it would not prevent * * * [taxpayer] from appointing as trustee a corporation in which he was the sole shareholder and from exercising control in this manner." *Id.* at 915.

Respondent's brief quotes the following language from the *Corning* opinion:

"the allocation of income and corpus among members of the grantor's intimate family group, the principal item of control involved herein, is a function for which the grantor is better equipped than a corporate trustee. We think that a trustee, subject to removal without cause, would probably accede to the grantor's wishes in this respect. If the trustee did not, we believe that the grantor would probably replace it with one which would. We are, of course, not concerned in the instant case with whether the grantor has actually exercised such influence over the trustee, or with whether the trustee has, in fact, acted in a subservient manner for, in cases of this nature, the existence of retained powers of control must determine the tax consequences." [*Corning v. Commissioner,* 24 T.C. at 914.]

Petitioner and amicus point out that *Corning* states that "We think the instant case is governed by our decision in *Louis Stockstrom et al., Trustees,* 4 T.C. 5 (1944), affd. 151 F.2d 353 (C.A. 8, 1945), where the grantor also had the power to substitute trustees without cause". *Corning v. Commissioner,* 24 T.C. at 913. But the opinion in *Stockstrom* flatly states that the grantor-taxpayer "reserved the right by amendment to the trust agreement to remove any of the trustees and to name herself trustee." *Stockstrom v. Commissioner,* 4 T.C. 5, 10 (1944), affd. 151 F.2d 353 (8th Cir. 1945).

Petitioner and amicus also note that:

(1) *Corning* is an income tax case and the income tax rules and the estate tax rules are not to be construed in pari materia. See *Galt v. Commissioner,* 216 F.2d 41, 45 (7th Cir. 1954), affg. in part and revg. in part 19 T.C. 892 (1953); see also *Bilingual Montessori School of Paris v. Commissioner,* 75 T.C. 480, 485 (1980).

(2) *Corning* was decided under pre-1954 Code provisions, and the 1954 Code statutorily overruled the *Clifford* case doctrine. According to petitioner and amicus, this fact is reflected in the last sentence of section 671 and section 1.674(d)-2(a), Income Tax Regs.

The last sentence of section 671 provides:

No items of a trust shall be included in computing the taxable income and credits of the grantor or of any other person solely on the grounds of his dominion and control over the trust under section 61 (relating to definition of gross income) or any other provision of this title, except as specified in this subpart.

Section 1.674(d)-2(a), Income Tax Regs., provides:

Sec. 1.674(d)-2. Limitations on exceptions in section 674(b), (c), and (d).

(a) *Power to remove trustee.* A power in the grantor to remove, substitute, or add trustees (other than a power exercisable only upon limited conditions which do not exist during the taxable year, such as the death or resignation of, or breach of fiduciary duty by, an existing trustee) may prevent a trust from qualifying under section 674(c) or (d). For example, if a grantor has an unrestricted power to remove an independent trustee and substitute any person *including himself* as trustee, the trust will not qualify under section 674(c) or (d). * * * On the other hand if the grantor's power to remove, substitute, or add trustees is limited so that its exercise could not alter the trust in a manner that would disqualify it under section 674(c) or (d), as the case may be, the power itself does not disqualify the trust. Thus, for example, a power in the grantor to remove or discharge an independent trustee on the condition that he substitute another independent trustee will not prevent a trust from qualifying under section 674(c). [Emphasis added.]

The last sentence of the regulation unquestionably casts substantial doubt upon any lingering significance of *Corning* as an income tax precedent. In any event, since the estate tax and the income tax are not necessarily to be construed together, neither *Corning* nor the "reversing" regulation need be considered binding precedents for the decision in this case.

As previously stated, the other significant arrow in respondent's quiver is the opinion of the Court of Appeals for the First Circuit in *Van Beuren v. McLoughlin,* 262 F.2d 315 (1st Cir. 1958). Respondent makes much of the fact that the opinion quotes at length from *Corning* to the effect that the grantor "'could substitute an independent corporate trustee after first ascertaining that such trustee would follow his [taxpayer's] directions.'" A fair reading of *Van Beuren v.*

*McLoughlin, supra,* including the per curiam opinion denying the petition for rehearing, 262 F.2d at 321, is sufficient to satisfy us that the central fact in that case was the taxpayer's retained right to appoint himself as a trustee, and thus exercise the trustees' power to alter or amend the trust indenture and thereby affect the beneficial enjoyment of the trust income. The case therefore does not support, except at most by way of dictum, the holding of the revenue ruling or respondent's position.

Among many cases, petitioner and amicus cite *Estate of Beckwith v. Commissioner,* 55 T.C. 242 (1970). In *Estate of Beckwith* the grantor created several irrevocable trusts and in each reserved the right to remove the trustees and replace them with anyone other than himself. We held for the taxpayer, but as respondent correctly points out, in *Estate of Beckwith* (unlike the situation in the case before us) the trustees' discretionary actions were substantially circumscribed. The trustees were authorized to apply or withhold income while a beneficiary was a minor, but the trustee was required to distribute all income to an adult beneficiary.

Petitioner and amicus also cite and discuss at length the case of *Byrum v. United States,* 311 F. Supp. 892 (S.D. Ohio 1970), affd. 440 F.2d 949 (6th Cir. 1971), affd. 408 U.S. 125 (1972), and its journey up the ladder of appeal. Respondent's reply brief challenges the relevance of *Byrum.*

As described by the District Court:

> The trust, by its terms, was irrevocable with the rights retained by the settlor being the power to vote the unlisted corporate stock in the trust, the power to remove the designated trustee and appoint a successor corporate trustee, and the power to veto the sale or investment of the trust corpus. [*Byrum v. United States,* 311 F. Supp. at 893.]

The trust indenture provisions quoted verbatim by the Supreme Court in a footnote to its *Byrum* opinion make it explicit that the settlor retained no power, even by indirection, to substitute himself as trustee. Possibly, though not necessarily, eroding the significance of this fact was the trust indenture's limitation of the trustee's power to make discretionary distributions of principal and income in accordance with what arguably was reasonably ascertainable. (The trustee was, however, authorized to distribute principal for, among the other enumerated purposes, "any other worthy

need.") *United States v. Byrum,* 408 U.S. 125, 127-129 n.1 (1972).

The issue focused on by all of the courts which considered the *Byrum* facts was the significance, for purposes of section 2036(a)(1) and (2), of the settlor's retained power to vote unlisted stock, and the resolution of this issue all the way up the line in favor of the taxpayer is only tangentially significant for purposes of resolving the issue before us. (In response to *Byrum,* Congress added section 2036(b) to expressly provide that the retention of the right to vote the stock of a controlled corporation is to be considered a retention of the enjoyment of transferred property. Revenue Act of 1978, Pub. L. 95-600, sec. 702(i), 92 Stat. 2763, 2931, effective for transfers made after June 22, 1976.) What may be noted for *present* purposes is how little importance was attached by any of the *Byrum* courts to the settlor's retained power to replace the independent corporate trustee with another corporate trustee.

The District Court summarily disposed of the trustee removal question by saying that

while it is true that Byrum had the power to remove the trustee and appoint a successor corporate trustee at any time (thus in reality, the Government suggests, Byrum had trustee type control over the trust corpus), whatever powers exercised by any successor corporate trustee were subject to scrutiny by a court of equity, thus preventing abuse of the trustee's power in favor of Byrum. * * * [*Byrum v. United States,* 311 F. Supp. at 895.]

The Circuit Court likewise disposed of the trustee-substitution question by simply saying: "Nor, for that matter, did the grantor's retaining of the power to replace the trustee by another corporate trustee make the value of the shares includable." *Byrum v. United States,* 440 F.2d 949, 952 (6th Cir. 1971).

The Supreme Court in its opinion merely noted, without further discussion, that the grantor reserved the right to remove the trustee and "'designate another corporate Trustee to serve as successor.'" *United States v. Byrum,* 408 U.S. 125, 127 (1972). However, it is important to note that in discussing the kind of retained 'right' that is contemplated by section 2036(a)(2), the Supreme Court expressly said that "The term 'right,' certainly when used in a tax statute, must

be given its normal and customary meaning. It connotes an ascertainable and legally enforceable power". 408 U.S. at 136; see *infra* pp. 311-314.

The parties and amicus cite and dismiss many other cases, none of which directly address the issue before us. Rev. Rul. 79-353, 1979-2 C.B. 325, does directly address the issue before us, but as already demonstrated, the conclusion it reached is supported neither by cogent argument nor by cited cases supporting the conclusion reached.

To recapitulate the salient facts: Mrs. Wall, the grantor, retained the right in each trust indenture to remove the corporate sole trustee and replace it with another corporate trustee which had to be "independent" from the grantor. In each case the trustee was given the authority to distribute principal and income to a beneficiary essentially unrestrained by an ascertainable standard. Did the right to replace the corporate trustee in turn encompass the right to exercise the powers of the trustee? For the following reasons, we think not.

The underlying assumption of Rev. Rul. 79-353, *supra,* and respondent's argument is that even a corporate trustee will be compelled to follow the bidding of a settlor who has the power to remove the trustee; otherwise the settlor will be able to find another corporate trustee which will act as the settlor wishes. In other words, says respondent, under these circumstances the settlor has the de facto power to exercise the powers vested in the trustee. But the Supreme Court has said in *Byrum* that the section 2036(a)(2) right connotes an ascertainable and legally enforceable power, as exemplified by the facts in *United States v. O'Malley,* 383 U.S. 627 (1966). As the Supreme Court states in *Byrum*: "O'Malley was covered precisely by the statute [section 2036(a)(2)] for two reasons: (1) there the settlor had reserved a legal right, set forth in the trust instrument; and (2) this right expressly authorized the settlor, 'in conjunction' with others, to accumulate income and thereby 'to designate' the persons to enjoy it." *United States v. Byrum,* 408 U.S. at 136.

In the case before us respondent simply speculates that Mrs. Wall, by merely threatening First Wisconsin to replace it, could indirectly have exercised powers of the trustee similar to, though broader than, those in *O'Malley.* In *Estate of Beckwith v. Commissioner,* 55 T.C. 242 (1970), the trust

indenture explicitly provided for the periodic distribution of trust income to a named beneficiary. Under the terms of the trust indenture the settlor retained no power or right to control the amounts or the timing of the distributions. The Commissioner, however, relied upon certain "practical considerations" which, he contended, enabled the decedent to control the flow of the income. The so-called practical considerations included the authority for the trust to retain stock in the settlor's closely held corporation; the power given the trustee to vote the stock; the settlor's retained right to remove a trustee and appoint a successor other than himself; and the close business relationships between the settlor and the individual trustees. We held that none of the so-called practical considerations nor all of them combined provided a basis for an inference that the settlor, by prearrangement or informal understanding or otherwise, reserved the right to cause the trustees to retain the closely held stock or to give the settlor proxies with respect thereto. *Estate of Beckwith v. Commissioner,* 55 T.C. at 248-249.

While it is true that First Wisconsin's power to distribute income and principal is not restricted to the extent existing in *Estate of Beckwith,* it is also true that, under established principles of the law governing trusts, a trustee would violate its fiduciary duty if it acquiesced in the wishes of the settlor by taking action that the trustee would not otherwise take regarding the beneficial enjoyment of any interest in the trust, or agreed with the settlor, prior to appointment, as to how fiduciary powers should be exercised over the distribution of income and principal. The trustee has a duty to administer the trust in the sole interest of the beneficiary, to act impartially if there are multiple beneficiaries, and to exercise powers exclusively for the benefit of the beneficiaries. See, e.g., Bogert, Law of Trusts and Trustees, sec. 543, at 217 (2d ed. 1993) ("Perhaps the most fundamental duty of a trustee is that he must display throughout the administration of the trust complete loyalty to the interests of the beneficiary and must exclude all selfish interest and all consideration of the interests of third persons."). While the parties and amicus have not briefed the Wisconsin law on this virtually universal rule, it would seem highly unlikely that there is a variance between Wisconsin and other jurisdictions.

In irrevocable trusts such as those under scrutiny, the trustee is accountable only to the beneficiaries, not to the settlor, and any right of action for breach of fiduciary duty lies in the beneficiaries, not in the settlor. Bogert, *supra* sec. 42, at 431-433. It also seems incontrovertible that the trustee's duty of sole fidelity to the beneficiary remains the same regardless of whether or not distributions are discretionary and whether or not limited by a standard such as one related to health, education, support in reasonable comfort, and the like.

In the absence of some compelling reason to do so, which respondent has not shown, we are not inclined to infer any kind of fraudulent side agreement between Mrs. Wall and First Wisconsin as to how the administration of these trusts would be manipulated by Mrs. Wall. Instead, since the language of the trust indentures provides maximum flexibility as to distributions of income and principal, the trustee would be expected to look to the circumstances of the beneficiaries to whom sole allegiance is owed, and not to Mrs. Wall, in order to determine the timing and amount of discretionary distributions.

It seems also likely that Mrs. Wall might have conceived that a beneficiary might move to a distant location, making the beneficiary's personal contact with the trust department impractical, or that First Wisconsin might merge with an out-of-state bank in a way that would change the character of its trust department. These motives, if they indeed existed, are not the equivalent of a retained right contemplated by section 2036(a)(2). Nor do they imply arrangements, not previously contemplated, made after a transfer has been completed to permit the transferor to enjoy the benefits of the property. See *Estate of Barlow v. Commissioner,* 55 T.C. 666, 670 (1971). We therefore apply the Supreme Court's definition of a section 2036(a)(2) retained right; namely, that it must be an ascertainable and legally enforceable power. *United States v. Byrum,* 408 U.S. at 136. We hold that Mrs. Wall did not retain such an ascertainable and enforceable power to affect the beneficial enjoyment of the trust property.

On brief respondent points out that sections 2036(a)(2) and 2038(a)(1) frequently overlap and urges that in this case both are equally applicable. We agree that these sections frequently overlap, but for reasons stated above we hold that

neither is applicable. We have focused essentially on section 2036(a)(2), but for the reasons given, Mrs. Wall's retained power to substitute another independent corporate trustee for First Wisconsin is not the type of power which would affect the "enjoyment" of the trust property contemplated by section 2036(a)(2) or section 2038(a)(1).

To reflect the foregoing,

*Decision will be entered for petitioner.*